**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 30, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GARY A. LOWE, JR.,

    Defendant - Appellant.

No. 22-3209
(D.C. No. 6:20-CR-10066-JWB-2)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BRISCOE**, and **EID**, Circuit Judges.
_____

Gary A. Lowe, Jr., pled guilty to one count of possession with intent to

distribute heroin and one count of being a felon in possession of a firearm.  Before

sentencing, Mr. Lowe moved to recuse the judge, who denied the motion and

imposed a 210-month prison sentence.  Mr. Lowe appeals the calculation of his

sentence and the denial of his recusal motion.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

The Government argues we should dismiss based on the appeal waiver in Mr. Lowe's plea agreement.  It also argues Mr. Lowe's appeal fails on the merits.

Exercising jurisdiction under 28 U.S.C. § 1291, we dismiss Mr. Lowe's appeal of his sentence by enforcing the appeal waiver.  We affirm the denial of his recusal motion.

## I.  BACKGROUND

### A. *Indictment*

A grand jury indicted Mr. Lowe on five drug- and gun-related charges.  He pled guilty to possession with intent to distribute a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a) (Count 2), and to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 5).  The Government dismissed the remaining counts.

### B. *Changes of Counsel*

A succession of five attorneys represented Mr. Lowe.  Even while represented, he routinely attempted to proceed pro se.

His second attorney moved to withdraw.  At a hearing on that motion, the district court[1] permitted Mr. Lowe to speak for himself.  He argued the indictment was unfair and flawed.  The judge told him twice not to argue and denied the motion to withdraw.

---

[1] We refer to the district court and the district judge interchangeably.

Several weeks later, a third attorney entered an appearance. Within a few months, the third attorney moved to withdraw. At a hearing on that withdrawal motion, Mr. Lowe repeatedly interrupted the judge, who told him to stop and to sit down. The judge then granted the motion to withdraw. The court later granted a motion for the second attorney to withdraw and appointed a fourth attorney.

Five months after appointment of the fourth attorney, Mr. Lowe filed a motion claiming ineffective assistance of counsel. The fourth attorney moved to withdraw. At the hearing on these motions, the judge noted, "Mr. Lowe, you and I have had a couple of hearings together," and after Mr. Lowe attempted to interrupt, the judge continued, "I'm going to start this one off by making sure you understand the ground rules . . . . You and I are going to address one another respectfully," and "[a]t the appropriate times I'm going to give you an opportunity to speak and explain your position," but "we're not going to talk over one another." ROA, Vol. 1 at 128. The judge added, "Ultimately, however, this is my courtroom and so when I talk, everyone else stops talking. Somebody's got to be in charge and around here, that's me; just one of the perks of the job." *Id.*

Later at the hearing, when Mr. Lowe spoke out of turn, the judge told him to stop until after his counsel had been heard. The judge let Mr. Lowe present his argument and then denied both Mr. Lowe's motion for a new attorney and the fourth attorney's motion to withdraw.

A few months later at another hearing, Mr. Lowe "made an oral motion to appear pro se," and his fourth attorney "made a[] [renewed] oral motion to

3

withdraw." *Id.* at 12-13.  Mr. Lowe later withdrew his motion, and the court denied the attorney's motion.  Mr. Lowe then "informed the court he would like an opportunity to retain a[] [fifth] attorney and requested a continuance of the [] trial date." *Id.* at 13.  The judge then contacted Mr. Lowe's proposed fifth attorney, who confirmed he was willing to represent Mr. Lowe.  The judge appointed the fifth attorney to the Criminal Justice Act panel and substituted him for the fourth attorney.  The judge also permitted the fifth attorney to refile several stricken motions that Mr. Lowe had filed pro se.

### C.  *Guilty Plea and Motion to Withdraw*

While represented by the fifth attorney, Mr. Lowe pled guilty to Counts 2 and 5 under a written plea agreement.  The agreement included an appeal waiver that prevented Mr. Lowe from challenging "any matter in connection with th[e] prosecution, his conviction, or the components of the sentence." *Id.* at 345-46.

Before sentencing, Mr. Lowe moved pro se to withdraw his plea based on ineffective assistance of counsel.  At a September 15, 2022 hearing to consider the matter, Mr. Lowe's fifth attorney told the court that "Mr. Lowe ha[d] not authorized [him] to do anything at this stage."  ROA, Vol. 3 at 34.  The court permitted Mr. Lowe to present his motion.  When Mr. Lowe challenged the judge's "failure to [] advise" him about the plea, the judge read "a rough transcript of the plea hearing." *Id.* at 38.  During this reading, Mr. Lowe repeatedly interrupted the judge, who told him, "Don't interrupt me," *id.*, and, "Will you quit interrupting me?  When I talk you stop talking," *id.* at 39.  The judge and Mr. Lowe then had the following exchange:

THE COURT:  Don't talk to [the prosecutor].

THE DEFENDANT:  Well, I'm talking to the Court.

THE COURT:  Well, then don't look at [the prosecutor].

THE DEFENDANT:  I can't look around?

THE COURT:  Don't you get smart with me.  I haven't finished sentencing you yet.  I will be the one who will be sentencing you.  You want to sit here and poke me in the eye, see what happens.

THE DEFENDANT:  I already know what's going to happen.

THE COURT:  You don't know anything that is going to happen, Mr. -- listen to me.  I have no desire to grind you up.  I'm not going to give you 30 years.  I know that right here and now.  I am going to give you a reasonable and just sentence once I review the presentence report and go through the sentencing process.  I have got nothing against you, but I'm telling you you're quite foolish to come in here antagonizing the person who is going to sentence you.  That's not a very wise litigation strategy.  Now, what else do you have to say?

*Id.* at 45.  Later in the hearing, the colloquy escalated:

THE DEFENDANT:  It doesn't matter what you explained, once this man told me that --

THE COURT:  Quit interrupting me.

THE DEFENDANT:  -- it didn't --

THE COURT:  This hearing is over.

THE DEFENDANT:  All right, this man does this, I told you, I knew this.

THE COURT:  Get this man out of here.

THE DEFENDANT:  I told you --

THE COURT:  You'll get a written order; we're done. This hearing is over.

THE DEFENDANT: . . . You didn't do nothing but be bias [*sic*] to [*sic*] me through this whole proceeding.

*Id.* at 58.

The court denied Mr. Lowe's motion to withdraw his plea.

### D. *Motion to Recuse*

After the district court denied Mr. Lowe's motion to withdraw his guilty plea, he filed a pro se motion to recuse the judge. In the motion, Mr. Lowe argued he was not receiving "fair and impartial hearings," ROA, Vol. 1 at 399, and that the judge was biased against him and was "hostile and harbor[ed] an aversion" toward him, *id.* at 406. Mr. Lowe cited 28 U.S.C. § 455 and Tenth Circuit case law regarding judicial recusal. *Id.* at 398-99; *id.* at 408 (citing *United States v. Pearson*, 203 F.3d 1243 (10th Cir. 2000); *United States v. Nickl*, 427 F.3d 1286 (10th Cir. 2005)). He also filed a pro se affidavit in support of his motion to recuse.

At a hearing on the motion, Mr. Lowe's counsel said he could not argue on Mr. Lowe's behalf because he was not authorized to do so. ROA, Vol. 3 at 67 ("I don't feel like I can argue this motion, Your Honor. But I think Mr. Lowe . . . would like to argue [it] . . . ."). The judge did not permit Mr. Lowe to argue the motion himself. Without hearing argument, the judge rejected Mr. Lowe's motion, stating:

> I went through that process [hearing the pro se guilty plea withdrawal motion] until Mr. Lowe he became so disruptive that I had him remove[d] from the Court and ultimately issued a written ruling on that matter [the guilty plea withdrawal]. . . . I think overall any objective person looking at that record would conclude that I have bent over backwards to accommodate this defendant who has been undoubtedly the most obstructive and difficult defendant to

deal with in any criminal case that I have had since coming on the bench. . . . There is just no basis whatsoever for any objective person to believe that I am biased, prejudiced, or have any sort of favoritism toward the Government. I reject that and I have made my record on it. So that motion is denied.

*Id.* at 77.

### E.  *Sentencing*

The district court proceeded to sentencing. When Mr. Lowe was arrested, police had found drugs and currency at his home. The Presentence Investigation Report ("PSR") had converted the amount of currency found at Mr. Lowe's residence to drug weight based on a dollars per pound ratio and added that calculated drug weight to the weight of actual drugs found at his residence. Mr. Lowe objected, arguing the drug quantity in the report differed from the "factual basis in the plea agreement." ROA, Vol. 1 at 418. The court rejected Mr. Lowe's argument, noting that calculating drug weight based on the factual basis in the plea is "not what is contemplated under the [U.S. Sentencing] [G]uidelines and the plea specifically contemplates relevant conduct" like related currency. ROA, Vol. 3 at 125.

The court sentenced Mr. Lowe to 210 months in prison on Count 2 and 120 months on Count 5, to run concurrently. He also received three years of supervised release for each count, to run concurrently.

### F.  *Appeal and Motion to Enforce Appeal Waiver*

Mr. Lowe timely appealed. The Government moved to enforce Mr. Lowe's appeal waiver and to dismiss the appeal. Following briefing on the issue, we denied the motion without prejudice to the Government's raising the issue in its brief.

Although Mr. Lowe's docketing statement expressed his intent to raise four issues on appeal, he has only raised two in his opening brief:  (1) whether the district judge abused his discretion in declining to recuse, and (2) whether the district court erred in determining the converted drug quantity based on the PSR.  Aplt. Br. at 14, 25.

The Government raised the appeal waiver issue in its response brief, arguing we should enforce the waiver as to both issues and dismiss the appeal.  Aplee. Br. at 20.  It alternatively argued we should affirm on the merits.  Mr. Lowe did not file a reply.

## II.  **DISCUSSION**

We enforce the appeal waiver on Mr. Lowe's sentencing claim but exercise our discretion to address the recusal issue on the merits.

### A.  *Legal Background*

"We review de novo the enforceability of a defendant's appeal waiver in a plea agreement."  *United States v. Gross*, 44 F.4th 1298, 1301 (10th Cir. 2022).

In deciding whether to enforce the waiver, we ask:  "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice."  *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

We determine whether the appeal waiver bars each argument presented on appeal.  *See, e.g.*, *Gross*, 44 F.4th at 1302-03 (holding two issues fell within appeal

8

waiver and "dismiss[ing] [the defendant's] appeal insofar as [his] arguments" bore on those issues); *United States v. Novosel*, 481 F.3d 1288, 1294-95 (10th Cir. 2007) (analyzing separately whether the appeal waiver covered ineffective assistance of counsel and factual basis for guilty plea).

Because appeal waivers do not affect our jurisdiction, *Hahn*, 359 F.3d at 1324, we may "bypass resolution" of an appeal waiver issue and reach the merits, *United States v. Garcia-Ramirez*, 778 F.3d 856, 857 (10th Cir. 2015). We do so here on the recusal issue because: "(1) the waiver issue [i]s relatively complex, (2) the government ha[s] briefed the merits, and (3) [Mr. Lowe's] appellate argument clearly fail[s]." *Id.* (citing *United States v. Black*, 773 F.3d 1113, 1115 n.2 (10th Cir. 2014)).

### B. *Application*

#### 1. **Sentencing**

Mr. Lowe alleges procedural error in the district court's drug-quantity calculation used for sentencing. *See United States v. Williams*, 48 F.4th 1125, 1128 (10th Cir. 2022) (explaining that a challenge to a drug-quantity calculation is procedural). Analyzing the three *Hahn* factors, we enforce Mr. Lowe's appeal waiver on his sentencing challenge.

##### a. *Scope*

Even "strictly constru[ing]" the language of Mr. Lowe's appeal waiver, *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004) (quotations omitted), his procedural reasonableness challenge falls within the waiver's scope. His appeal waiver reads:

9

> The defendant knowingly and voluntarily waives any right
> to appeal or collaterally attack any matter in connection
> with this prosecution, his conviction, or the components of
> the sentence . . . .  The defendant also waives any right to
> challenge his sentence, or the manner in which it was
> determined, or otherwise attempt to modify or change his
> sentence, in any collateral attack, including, but not limited
> to, a motion brought under 28 U.S.C. § 2255 (except as
> limited by *United States v. Cockerham*, 237 F.3d 1179,
> 1187 (10th Cir. 2001)), or a motion brought under Federal
> Rule of Civil Procedure 60(b).  In other words, the
> defendant waives the right to appeal the sentence imposed
> in this case, except to the extent, if any, the Court departs
> or varies upwards from the sentencing Guideline range that
> the Court determines to be applicable. . . .
> Notwithstanding the forgoing [*sic*] waivers, the parties
> understand that the defendant in no way waives any
> subsequent claims with regards to ineffective assistance of
> counsel or prosecutorial misconduct.

ROA, Vol. 1 at 345-46.  Mr. Lowe thus waived the "right to appeal . . . the

components of his sentence," "any right to challenge his sentence, or the manner in

which it was determined," and "the right to appeal the sentence imposed," except in a

situation not relevant here (upward departure or variance from the Guidelines range).

*Id.*  In *Gross*, we enforced an appeal waiver under nearly identical language:  the

defendant "waived the right to appeal his 'sentence as imposed by the Court,

including . . . the manner in which the sentence is determined.'"  44 F.4th at 1301

(alterations in original).  Mr. Lowe's sentence challenge falls within the scope of his

appeal waiver.

b.  *Knowing and voluntary*

Mr. Lowe has not argued his appeal waiver was not knowing and voluntary.

In his response to the Government's motion to enforce the plea waiver, he argued

10

only that he did not knowingly and voluntarily waive his "constitutional right to an unbiased judge" or "his right to assert ineffective assistance of counsel." *See* Doc. 10977154 at 13-14. As noted, Mr. Lowe has not replied to the Government's renewed motion to enforce the appeal waiver. He thus has not shown the appeal waiver was not knowing and voluntary. *See Anderson*, 374 F.3d at 958-59.

　　c. *Miscarriage of justice*

Enforcement of the waiver will not result in a miscarriage of justice. A defendant may show a miscarriage of justice "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." *Hahn*, 359 F.3d at 1327 (alterations in original) (quotations omitted). Mr. Lowe has not done so.

　　First, no evidence shows that Mr. Lowe's race or a similar impermissible factor affected his sentence.

　　Second, Mr. Lowe argued in his response to the motion to enforce the appeal waiver that he could claim ineffective assistance of counsel in connection with the negotiation of his plea agreement. *See* Doc. 10977154 at 15-17. But the record shows otherwise.

　　In one of his pro se motions in district court, Mr. Lowe argued ineffective assistance because he entered into the plea agreement "pur[e]ly based on the stern advice of [his] attorney." ROA, Vol. 1 at 349. He claimed that "[t]he plea was given

11

to [him] the morning of [his] trial, and in the course of 10 minutes [his] attorn[e]y briefly tried to explain it to [him]," and that "[n]ever, not once did [the attorney] tell [Mr. Lowe] . . . about the maximum sentence that [he] could receive." *Id.* at 349-50. But the district court found Mr. Lowe's claims to be "contradicted by the record." *Id.* at 390.

The Government offered the plea to Mr. Lowe more than six months before his trial date, amended it once, and then re-extended it to him four months before the trial. *Id.* at 292-93. The Government also told the court that Mr. Lowe's fourth and fifth attorneys had both reviewed the plea agreement with him. *Id.* at 293. Mr. Lowe admitted to the court that he understood the appeal waiver would "generally giv[e] up [his] right to challenge th[e] prosecution, [his] conviction, or [his] sentence in this case." *Id.* at 314-15. And he admitted that the plea agreement was "read by [him] or at least read to [him] word for word" and that he and his fifth attorney "had time to review and discuss all the documents or other evidence produced by the Government." *Id.* at 307.

In this court, Mr. Lowe argued in his response to the Government's motion to enforce the appeal waiver that "a full record was not developed" on this issue. Doc. 10977154 at 16. But given the record before us, nothing indicates Mr. Lowe received ineffective assistance in the negotiation of the waiver.

Third, Mr. Lowe's sentence does not exceed the statutory maximum. The statutory maximum for his drug offense alone without enhancements for prior

offenses was 20 years.  21 U.S.C. § 841(b)(1)(C).  Mr. Lowe was sentenced to 210 months (17.5 years) in prison.  ROA, Vol. 1 at 442.

Fourth, we see no reason, and Mr. Lowe has not provided one, why the waiver would be otherwise unlawful.

* * * *

We enforce Mr. Lowe's appeal waiver and dismiss his appeal on the sentencing issue.

2. **Recusal**

Rather than address whether Mr. Lowe's motion to recuse is within the scope of his appeal waiver, we exercise our discretion to address it on the merits.  *See Garcia-Ramirez*, 778 F.3d at 857.

Mr. Lowe contends the district court judge erred in denying his motion to recuse because (1) based on the hearing on his motion to withdraw his guilty plea, "a reasonable person would harbor doubts about the judge's impartiality," requiring recusal under 28 U.S.C. § 455; and (2) the judge was required to ask another judge to decide the motion under 28 U.S.C. § 144.  Aplt. Br. at 16.

a.  *Partiality*

We review the "denial of a motion to disqualify a judge for abuse of discretion."  *Burke v. Regalado*, 935 F.3d 960, 1052 (10th Cir. 2019).  "Under this standard, we will not reverse unless the [judge] has made an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."  *Id.* (quotations omitted).

"Section 455(a) requires disqualification for the appearance of impartiality, § 455(b)(1) for actual partiality." *Id.* at 1053; *see also Liteky v. United States*, 510 U.S. 540, 552-53 & n.2 (1994). Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." And § 455(b) lists specific grounds for disqualification, including "[w]here [the judge] has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). Mr. Lowe invokes both § 455(a) and § 455(b)(1). Aplt. Br. at 13.[2]

Both arguments fail. Mr. Lowe has not shown any judicial bias or partiality. The Supreme Court has held that "expressions of impatience, dissatisfaction, annoyance, and even anger," do "[n]ot establish[] bias or partiality." *Liteky*, 510 U.S. at 555-56. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune" from challenge under § 455. *Id.* at 556.

At the September 15 hearing, the judge employed "ordinary efforts at courtroom administration," *id.*, particularly in light of Mr. Lowe's lack of decorum throughout the proceedings and his self-described "impulsive[ness]," ROA, Vol. 3 at

---

[2] The Government appears to assert that Mr. Lowe made only a § 455(a) argument and not one under § 455(b)(1). *See* Aplee. Br. at 39-40. We think arguments under both are preserved. Although Mr. Lowe's motion concerned a "violation of 28 U.S.C. [§] 455(a)," ROA, Vol. 1 at 398, the judge also addressed whether he should recuse under (b)(1), ROA, Vol. 3 at 68. We may "reach issues that were either pressed by the appellant before, or passed upon by, the lower court." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 992 (10th Cir. 2019) (quotations omitted).

43.  Mr. Lowe argues the statement "Don't you get smart with me.  I haven't finished sentencing you yet," is "objectively, [] a threat."  Aplt. Br. at 21.  We disagree, especially in light of the judge's immediate statement to the contrary:  "I have no desire to grind you up.  I'm not going to give you 30 years.  I know that right here and now.  I am going to give you a reasonable and just sentence once I review the presentence report and go through the sentencing process."  ROA, Vol. 3 at 45.

Mr. Lowe also takes issue with the district judge's statements at earlier hearings.  *See* Aplt. Br. at 16-18.  Those statements—such as, "Somebody's got to be in charge and around here, that's me; just one of the perks of the job," ROA Vol. 1 at 128, and, "Quit interrupting me," ROA, Vol. 3 at 58—are at most "expressions of impatience, dissatisfaction, annoyance, and even anger" made while attempting to maintain decorum in the courtroom, *Liteky*, 510 U.S. at 555-56.  Even though the judge said Mr. Lowe was "undoubtedly the most obstructive and difficult defendant to deal with in any criminal case that [he] ha[d] had since coming on the bench," ROA, Vol. 3 at 77, the judge showed no bias against Mr. Lowe nor partiality toward the Government.

We see no abuse of discretion in the judge's denial of Mr. Lowe's motion.

b.  *Decision by another judge*

Mr. Lowe argues on appeal that another judge should have decided his recusal motion.  Aplt. Br. at 15, 16.  But he did not raise this issue in district court, nor did the judge address it.  Mr. Lowe thus forfeited this argument, and he has not argued plain error on appeal.  "When an appellant fails to preserve an issue and also fails to

15

make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all . . . ." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). We will not review the issue in these circumstances.

### III.  **CONCLUSION**

We dismiss the appeal as to Mr. Lowe's sentencing issue and affirm the district court's denial of his motion to recuse the district judge.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge